# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 24-40247-357 |
| JACQUELINE G. SHELBY, | Chapter 7 |
| Debtor. | Related to Doc. 26 |

## MEMORANDUM OPINION

Debtor Jacqueline Shelby owns a modest single-family home, in which she appears to have some equity. She commenced a Chapter 7 case in January of this year, and her home became property of the bankruptcy estate. After investigating the home and its value, the Chapter 7 Trustee retained counsel and a broker to assist him in selling the home. Meanwhile, the Debtor received a discharge of her debts on April 24.

Several weeks later, the Trustee filed a motion seeking to compel the Debtor to cooperate with the marketing and sale of the home. The Debtor responded with a Motion to Convert from Chapter 7 to Chapter 13 (the "Motion"). The Trustee opposes the Motion on several grounds, including the argument that a Chapter 7 debtor cannot convert a case to Chapter 13 after receiving a discharge.

For the reasons that follow, I will grant the Motion and convert this case to Chapter 13, while setting aside the Chapter 7 discharge. I also will permit the Trustee to request payment of administrative expenses that he and his professionals incurred before the conversion of this case.

I.  **Factual and Procedural Background**

According to the Debtor's Schedule I, her only income is from Social Security benefits and pension or retirement income, and her non-filing spouse has no income. After deducting her expenses on her original Schedule J, the Debtor reported a negative net monthly income of $352.84. The Debtor listed a single-family home valued at $43,000 on her Schedule A/B, as well as a $15,366 secured claim held by her mortgagee on Schedule D. She also claimed a $15,000 homestead exemption on Schedule C.

The Trustee presents four primary arguments in opposition to the Motion. First, the Trustee argues that a Chapter 7 debtor cannot convert a case to Chapter 13 after receiving a discharge. Second, he argues that conversion would be futile in this case, because the Debtor does not have disposable income with which to fund a plan. Third, the Trustee claims that the Debtor's attempt to convert to prevent the Trustee from liquidating her house amounts to an abuse of the bankruptcy process. And, finally, the Trustee argues that if the Debtor is permitted to convert, she should be required to reimburse him and his professionals for the fees and expenses they incurred in administering the estate. The Debtor filed a reply, arguing that a Chapter 7 discharge is not a bar to conversion, and, regardless, the Court may set aside the discharge under Federal Rule of Civil Procedure 60(b)(5).

I heard the Motion on July 10, 2024 and took the matter under advisement, offering the Debtor an opportunity to respond to the Trustee's futility objection by amending her schedules and filing a proposed Chapter 13 plan.

The Debtor filed an amended Schedule J with significantly lower expenses. Among the notable reductions are: (1) the elimination of charitable contributions, which had been $210 per month; (2) the reduction of medical and dental expenses by $150 per month, which the Debtor says represents recurring payments on dischargeable debts rather than ongoing care; and (3) the elimination of home maintenance, repair, and upkeep expenses, which had been $75 per month, because the Debtor has a history of receiving home-repair assistance through local non-profit organizations. On the bottom line, the Debtor projects positive net income of $187.16 per month.

The Debtor also filed a proposed Chapter 13 plan, which provides for 36 monthly payments of $112.18 and includes a $2,099.58 guarantee to non-priority unsecured creditors under the best-interests-of-creditors test of Section 1325(a)(4) of the Bankruptcy Code. By agreement with her counsel, the Debtor proposes to pay attorneys' fees of $1,687 under the plan, a significant discount from the market rate. In response, the Trustee contends that the Debtor would be required to pay $4,574 to general unsecured creditors under the best-interests test, and so the plan is not confirmable.

## II.    Analysis

Section 706(a) of the Bankruptcy Code gives a Chapter 7 debtor the right to convert to Chapter 13 "at any time." 11 U.S.C. § 706(a). This right has been described as "absolute," so long as the debtor complies with the Code's express limitations. *See, e.g.*, *In re Little*, 245 B.R. 351, 354 (Bankr. E.D. Mo.), *appeal dismissed as moot*, 253 B.R. 427 (B.A.P. 8th Cir. 2000); *see also* 11 U.S.C. § 706(a) (permitting conversion only if the case has not already been converted), and § 706(d) (permitting conversion only if a debtor qualifies to be a debtor under the new

chapter). However, case law establishes that this right is limited by non-statutory exceptions originating from the inherent equitable power of the bankruptcy courts. *See* 11 U.S.C. § 105(a). First, some courts deny a Chapter 7 debtor's request to convert if that debtor has already received a discharge. *See, e.g.*, *In re Lesniak*, 208 B.R. 902, 905 (Bankr. N.D. Ill. 1997). Second, a request to convert may be denied if the debtor is destined to fail in the new chapter, such as where the debtor cannot propose or fund a confirmable plan. *See, e.g.*, *In re Glenn*, 408 B.R. 800, 802-03 (Bankr. E.D. Mo. 2009). Finally, a court may refuse to permit conversion if it would be an abuse of the bankruptcy process, or if the debtor's conduct rises to the level of bad faith. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372-73, 375 (2007).

Because the Trustee relies on each of these non-statutory exceptions, I analyze them in turn.

### A. Conversion After Discharge

The Trustee argues that a Chapter 7 debtor cannot convert to Chapter 13 after receiving a discharge. This argument is not without support. *See, e.g.*, *Little*, 245 B.R. at 355 ("[A]bsent compelling circumstances, a motion to convert from Chapter 7 to Chapter 13, presented after the entry of a Chapter 7 Order of Discharge, will be denied.") (dicta). Several courts have concluded that conversion after discharge is pointless because the debtor's debts have been extinguished. *See Lesniak*, 208 B.R. at 905; *In re Safley*, 132 B.R. 397, 399-400 (Bankr. E.D. Ark. 1991). *But see In re Mosby*, 244 B.R. 79, 87 (Bankr. E.D. Va. 2000) (concluding that the discharge extinguishes only a debtor's personal liability, and that any debts remain claims against the bankruptcy estate); *In re Pike*, 622 B.R. 898, 900 (Bankr. S.D. Ill. 2020) (same).

Other courts advance a different rationale: conversion is not possible after discharge because a debtor's personal liability for any debts has been extinguished, and Section 109(e) of the Bankruptcy Code limits Chapter 13 to an individual "that owes . . . noncontingent, liquidated, unsecured debts." *See In re Alcantar*, No. 19 B 24926, 2021 WL 4192680, at *4 (Bankr. N.D. Ill. Sept. 10, 2021); *In re Pearson*, No. 08-BK-1970, 2015 WL 3455305, at *3 (Bankr. N.D. W. Va. May 26, 2015).

Another argument against conversion after discharge is that conversion would upset the "quid pro quo" of Chapter 7 bankruptcy. *In re Jeffrey*, 176 B.R. 4, 6 (Bankr. D. Mass. 1994). At its core, Chapter 7 requires debtors to "surrender their nonexempt assets to the trustee for liquidation and distribution among creditors" in exchange for a discharge. *Id.* According to this argument, conversion to Chapter 13 while the debtor retains a Chapter 7 discharge is inconsistent with this compromise. *See In re Santos*, 561 B.R. 825, 831 (Bankr. C.D. Cal. 2017) ("[T]he Chapter 7 case is not fully administered, and, therefore, there is no

benefit to the estate in exchange for the Debtors' discharge."); *In re Rigales*, 290 B.R. 401, 407 (Bankr. D.N.M. 2003) ("[If] a debtor converts to Chapter 13 after the Chapter 7 discharge, but before the estate property is liquidated, he has received all of the benefits of Chapter 7 without any of the burdens, because he regains his nonexempt property, and his debts have all been discharged.").

Still other courts resolve the complex issues in a post-discharge conversion case by setting aside the discharge under Federal Rule of Civil Procedure 60(b). *See* Fed. R. Bankr. P. 9024; *In re Starling*, 359 B.R. 901, 916-17 (Bankr. N.D. Ill. 2007); *In re Hauswirth*, 242 B.R. 95, 97 (Bankr. N.D. Ga. 1999). Rule 60(b)(5) permits a court to grant relief from an order where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "An order has prospective application . . . if it is executory or involves the supervision of changing conduct or conditions." *In re Racing Services*, 571 F.3d 729, 733 (8th Cir. 2009) (cleaned up). Under the rule, a court may modify an injunction "when changed circumstances have caused it to be unjust." *Keith v. Mullins*, 162 F.3d 539, 540-41 (8th Cir. 1998).

To resolve this question in the context of the present case, I begin with the text of the statute. *See Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). Nothing in Section 706 expressly prevents a debtor from converting a case after receiving a discharge. This section does not distinguish between conversions sought before or after discharge—a debtor may convert "at any time." 11 U.S.C. § 706(a). Unless the case has been converted already, conversion is expressly conditioned only on a debtor's eligibility to be a debtor in the new chapter. *Id.* § 706(d). Eligibility for Chapter 13 turns primarily on whether a debtor is "an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated" debts below certain thresholds, not whether that debtor has already received a discharge. *Id.* § 109(e).[1]

The Court in *Marrama* also recognized that a debtor may be effectively ineligible for Chapter 13 if the case would immediately be subject to dismissal or reconversion for cause. *See* 549 U.S. at 372-73. But although the recent receipt of a discharge may preclude a Chapter 13 debtor from receiving another discharge, it is not cause for dismissal or reconversion. *Compare* 11 U.S.C. § 1328(f), *with id.* § 1307(c); *see also In re Fisette*, 455 B.R. 177, 185 (B.A.P. 8th Cir. 2011) (debtor may confirm plan and strip off liens even when not eligible for

---

[1] I disagree with courts that have denied conversion on the basis that a debtor no longer owes debts after receiving a discharge. Section 109(e) clearly asks whether the debtor owed debts on the petition date, not whether the debtor remains personally liable for those debts on the conversion date. *See also* 11 U.S.C. § 348(a) (conversion "does not effect a change in the date of the filing of the petition").

discharge), *appeal dismissed*, 695 F.3d 803 (8th Cir. 2012). Accordingly, the text of Section 706 suggests that conversion after discharge is not categorically prohibited.

The larger framework of the Bankruptcy Code also supports this conclusion. Although a Chapter 11 debtor may not convert to Chapter 12 or Chapter 13 after receiving a discharge, no similar limitation exists for Chapter 7 debtors. *See* 11 U.S.C. § 1112(d)(2). And the Code has other express limitations on conversion. For instance, a Chapter 13 case involving a farmer may be converted only if the debtor requests conversion. *See id.* § 1307(f). And a case may not be converted to Chapter 12 or Chapter 13 from Chapter 7 absent a debtor's consent. *See id.* § 706(c). "The absence of a like prohibition . . . combined with the evident care with which Congress fashioned these express prohibitions" strongly suggests that "Congress did not intend categorically to foreclose" conversion to Chapter 13 after a Chapter 7 discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991).[2]

Nevertheless, I recognize the potential for abuse and confusion in a case that is converted post-discharge. Of course, a debtor does not have the absolute right to dismiss a Chapter 13 case if it has been converted from Chapter 7. *See* 11 U.S.C. § 1307(b). But having already received a Chapter 7 discharge, the debtor may have little incentive to fund a Chapter 13 plan. If the debtor's failure to confirm or to perform under a plan were to lead to dismissal, the debtor arguably would retain both the discharge *and* the assets of the bankruptcy estate, undermining the "quid pro quo" of Chapter 7.[3] *See Jeffrey*, 176 B.R. at 6. But even in the absence of such mischief, creditors, the debtor, and others are likely to be confused about their rights if the debtor has received a discharge, while the automatic stay remains in effect as to acts against property of the estate, and yet the stay has terminated as to other acts. *See* 11 U.S.C. § 362(c)(1)-(2). And what is a creditor to make of a deadline to file a proof of claim on account of a debt that has been discharged (and, possibly, written off in the creditor's books)?

---

[2] *Johnson* establishes that a debtor may file successive Chapter 7 and Chapter 13 cases. That issue is distinct from whether a debtor may convert a single case from Chapter 7 to Chapter 13, although the Tenth Circuit appears to have conflated the two in *In re Young*, 237 F.3d 1168, 1173-74 (10th Cir. 2001). I rely on *Johnson* here for its analytical approach, not for its holding.

[3] It is not clear that a debtor in this situation would, in fact, be able to retain a discharge previously granted. I note, however, that Section 349 of the Bankruptcy Code sets forth a number of things that occur automatically upon dismissal of a case, and vacating a discharge is not among them. *See also In re Henderson*, 472 B.R. 579, 581 (Bankr. D. Colo. 2012) ("The cases in which a Chapter 7 debtor's case was dismissed post-discharge uniformly hold that the dismissal had no automatic effect on the discharge.") (cleaned up).

These problems can be mitigated if the court sets aside the Chapter 7 discharge under Rule 60(b)(5) and reinstates the automatic stay upon conversion. The potential for abuse and confusion in this case, together with the Debtor's failure to follow through with the *quid pro quo* of Chapter 7, makes it "no longer equitable" to apply the Chapter 7 discharge injunction prospectively. Fed. R. Civ. P. 60(b)(5).[4] The Debtor's decision to convert to Chapter 13 to retain her house, an asset of the Chapter 7 estate, also is a "changed circumstance" that makes it "unjust" for her to have the benefit of an injunction against creditor activity, particularly when the automatic stay is available to provide temporary protection while she proceeds in Chapter 13. *Keith*, 162 F.3d at 541 (cleaned up).

Accordingly, I conclude that a Chapter 7 debtor who has received a discharge may convert to Chapter 13, but the discharge should be set aside under Rule 60(b)(5) upon conversion.

B.   **Futility**

The Trustee also argues that the Motion should be denied because conversion to Chapter 13 would be futile. A court may deny a debtor's request to convert to Chapter 13 if the state of the debtor's finances would "render the conversion 'an exercise in futility.'" *Glenn*, 408 B.R. at 803 (quoting *In re Lilley*, 29 B.R. 442, 443 (B.A.P. 1st Cir. 1983)); *see also In re Marcakis*, 254 B.R. 77, 83 (Bankr. E.D.N.Y. 2000) (denying conversion where debtor could not complete plan payments within 5 years); *In re Aguirre*, No. BR 23-03639-CL7, 2024 WL 3423242, at *3-4 (Bankr. S.D. Cal. July 15, 2024) (denying conversion where debtor could not satisfy best-interests-of-creditors test).

The futility principle is essentially an extension of *Marrama*. A debtor's inability to confirm a plan or inability to perform under a plan is cause for dismissal or reconversion to

---

[4] Several courts have concluded that a discharge cannot be set aside under Rule 60(b)(5) because it does not have a "prospective application." *See In re Estrada*, 568 B.R. 533 (Bankr. C.D. Cal. 2017); *In re Chavez*, No. 9:16-BK-10709-DS, 2020 WL 7485229 (Bankr. C.D. Cal. Aug. 14, 2020). I respectfully disagree. A discharge "operates as an injunction . . . prohibiting creditors from attempting to collect or to recover the debt." *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2081 (2024) (cleaned up); *see also* 11 U.S.C. § 524(a)(2). Should a creditor fail to comply with the discharge injunction, a bankruptcy court may enforce it through its inherent contempt power. *See Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). Because the discharge injunction "involves the supervision of changing conduct or conditions," it has a prospective application for purposes of Rule 60(b)(5). *Racing Services*, 571 F.3d at 733 (cleaned up).

Chapter 7. *See* 11 U.S.C. § 1307(c)(5), (6). A ruling that a Chapter 13 case should be dismissed or converted "is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Marrama*, 549 U.S. at 374. Therefore, it may be appropriate to deny a motion to convert if the debtor clearly cannot succeed in Chapter 13, "in lieu of a conversion order that merely postpones the allowance of equivalent relief." *Id.* at 375.

The Trustee had a strong futility argument based on the Debtor's original schedules. The Debtor's negative net monthly income would not have permitted her to make the minimum $75 monthly plan payment required by Local Rule 3015-2(F), much less to fund the administrative expenses of a Chapter 13 case and to pay unsecured creditors the equivalent of the net equity in her home. The Debtor's updated schedules, however, project positive net monthly income of $187.16. The Trustee has not taken issue with any of the Debtor's adjustments to her budget, but I have reviewed them anyway. I have some concern that the Debtor will not be able to keep her expenditures within the tight constraints of the amended Schedule J for three years, and especially that she may not be in a position to address the sorts of unpredictable expenses that can trip up even the most confident of budgeters. But the possibility that the Debtor may not complete a Chapter 13 plan is not the same thing as futility.

The Trustee continues to press his futility argument on the basis of the best-interests-of-creditors test of Section 1325(a)(4). By his calculation, general unsecured creditors would receive $4,574 in a hypothetical Chapter 7 liquidation, but the Debtor's proposed plan guarantees them only $2,099.58. If the Trustee's analysis is correct, the proposed plan does not satisfy the best-interests test.

The best-interests test in this case turns largely, and perhaps entirely, on the value of the Debtor's home. Neither party has presented an appraisal or other compelling evidence of its value, but their informal estimates are relatively close to one another. *Cf. Aguirre*, 2024 WL 3423242, at *3 (denying conversion where, based on debtor's own calculation, "unsecured creditors would receive $148,699.93 more in a hypothetical liquidation than under the current proposed plan."). And even if the Debtor must commit more to general unsecured creditors than her current plan does, she has some dry powder. Because her projected monthly net income is $187.16, but the proposed plan payment is only $112.18, she could amend the plan to increase payments by approximately $75 more per month, or $2,700 over 36 months. And, if necessary, she could propose a plan term longer than the minimum of 36 months.

None of this guarantees that the Debtor can confirm a plan, or that the plan will be feasible, or that she will be able to make the required payments.[5] But that is not the test. Because I do not believe that conversion of this case to Chapter 13 is "an exercise in futility," *Glenn*, 408 B.R. at 803, I conclude that it is appropriate for the Debtor to have an opportunity to pursue confirmation and a Chapter 13 discharge.

### C. Abuse of the Bankruptcy Process

The Trustee also argues that conversion should be denied because the Debtor's conduct amounts to an abuse of the bankruptcy process.

As discussed above, *Marrama* establishes that a court may deny a motion to convert because of the debtor's bad-faith conduct. *See Marrama*, 549 U.S. at 373-74. Older cases reached the same conclusion when conversion would be an "abuse of the bankruptcy process," *In re Young*, 269 B.R. 816, 824 (Bankr. W.D. Mo. 2001), or in "extreme circumstances," such as a debtor's "failure to disclose assets to the court, an attempt to escape debts rather than repay them, fraudulent misrepresentations to the court, and manipulation of the Bankruptcy Code." *Martin v. Cox*, 213 B.R. 571, 573 (E.D. Ark. 1996), *aff'd*, 116 F.3d 480 (8th Cir. 1997). Because the Court in *Marrama* relied specifically on the power of a bankruptcy court "'to prevent an abuse of process,'" it appears that behavior of this sort remains disqualifying even if it is not characterized as bad faith. *Marrama*, 549 U.S. at 375 (quoting 11 U.S.C. § 105(a)).

The Trustee asserts that the Debtor's request to convert amounts to an abuse of the bankruptcy process in two key respects. First, despite the negative net income disclosed under penalty of perjury on her original Schedules I and J, the Debtor now claims to have sufficient income to fund a Chapter 13 plan. I do not agree that this is abusive. The Debtor did not attempt to conceal the home or its likely value from the Trustee or her creditors. *Cf. Jeffrey*, 176 B.R. at 6 (denying conversion where debtors "failed to disclose what appears to be their only asset of value to creditors"). She disclosed the home on her original Schedule A/B, with a value not materially different from the Trustee's estimate, and the mortgagee's secured claim on Schedule D. Nor does it appear that the Debtor artificially inflated her expenses in her

---

[5] Among the largest feasibility variables is the Trustee's request to be compensated for his administrative expenses, which I address below. The Trustee also argues that the plan is not feasible because it does not account for monthly payments to a creditor holding a claim secured by the Debtor's car. This omission does not materially affect my analysis, because the car payments are deducted on Schedule J as part of the calculation of the net monthly income of $187.16.

original schedules. *Cf. In re Mottilla*, 306 B.R. 782, 792-93 (Bankr. M.D. Pa. 2004). The Debtor's counsel stated at the hearing that she was willing to reduce her expenses to keep her house, and her amended Schedule J reflects this willingness. For instance, the Debtor has eliminated charitable contributions and reduced her discretionary spending in several areas. In short, it does not appear that her original schedules were inaccurate or misleading; rather, the Debtor is now making a diligent effort to reduce her expenses to retain her home. This conduct does not amount to an abuse of the bankruptcy process.

Second, the Trustee argues that the Debtor did not seek to convert this case until after he took steps to sell her home for the benefit of creditors, and by then, he had incurred professional fees and expenses in reliance on her remaining in Chapter 7. I recognize that the Debtor's attempt to convert only after the Trustee took steps to sell the home has been inconvenient. Had the Trustee known that the Debtor would have preferred conversion to Chapter 13 over losing her home, he may not have taken the steps to hire counsel and a realtor. But above all, the Debtor clearly would have preferred for the Trustee to abandon the home as having inconsequential value to the estate. This was not an unreasonable goal, and the Debtor did not engage in abusive tactics to achieve it. Without something more, I do not believe that the Debtor's initial attempt to obtain a Chapter 7 discharge rather than a Chapter 13 discharge, which involves more time, money, and uncertainty, is the sort of "extraordinary" or "extreme" circumstance that disqualifies a debtor from converting a case. *Marrama*, 549 U.S. at 375 n.11; *Martin*, 213 B.R. at 573.

### D. The Trustee's Fees and Expenses

Related to the Trustee's reliance argument is his alternative request that the Debtor be required to pay his and his professionals' fees and expenses incurred in Chapter 7.

As a general matter, Section 330(a)(1) of the Bankruptcy Code provides that "the court may award to a trustee . . . or a professional person employed under section 327 . . . reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1). Unpaid professional fees and expenses may become an administrative claim in a bankruptcy case. *See id.* §§ 503(b)(2) (allowing an administrative expense for "compensation and reimbursement awarded under section 330(a)"); 507(a)(2) (giving priority status to administrative expenses allowed under Section 503(b)).

Section 326(a) limits a Chapter 7 trustee's own fees to a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest." *Id.* § 326(a). As a result, some courts have concluded that a Chapter 7 trustee who has not disbursed funds before the case is converted cannot be compensated. *See, e.g.*, *In re Fischer*, 210 B.R. 467, 469 (Bankr. D. Minn. 1997); *In re Silvus*, 329 B.R. 193, 221 (Bankr. E.D. Va. 2005); *In re Giger*,

504 B.R. 286, 288-89 (Bankr. D. Me. 2014). Others disagree. *See, e.g.*, *In re Pivinski*, 366 B.R. 285, 290 (Bankr. D. Del. 2007) (permitting Chapter 7 trustee to recover fees and expenses under doctrine of quantum meruit).

There does not appear to be any controlling authority in this District on this point. *See In re Robb*, 534 B.R. 354, 356 (B.A.P. 8th Cir. 2015) (noting that bankruptcy court awarded Chapter 7 trustee an administrative claim for services rendered, despite Section 326(a), but dismissing appeal); *In re Little*, 253 B.R. 427, 429, 431 (B.A.P. 8th Cir. 2000) (noting award to trustee but not identifying basis). And it is not clear whether the Trustee himself will seek a fee. I will thus defer consideration of whether a trustee may be awarded a fee until the issue is presented concretely and briefed by the parties.

The Trustee's counsel and realtor are not limited by Section 326(a). *See In re Spence*, 497 B.R. 99, 110 (Bankr. D. Colo. 2013) ("Section 326(a) provides certain statutory limitations on compensation of trustees in Chapter 7 or 11 cases, not to *counsel* to a trustee."); *In re Collins*, 210 B.R. 538, 540 (Bankr. N.D. Ohio 1997) (concluding that Section 326(a) does not apply to Chapter 7 trustee that received court authorization to act as attorney for trustee); *In re Kuhn*, 337 B.R. 668, 671-72 (Bankr. N.D. Ind. 2006) (same). Accordingly, the Trustee may seek compensation and reimbursement of expenses for these professionals as a priority administrative claim in the converted Chapter 13 case.

I recognize that an administrative claim may create an additional burden on the Debtor as she attempts to craft and fund a Chapter 13 plan. *See* 11 U.S.C. § 1322(a)(2). But awarding the Trustee an administrative claim for these professional services "prevents [the] unfair treatment of Chapter 7 trustees where the conversion . . . was for the purpose of avoiding the consequences of a trustee's action in locating, identifying and administering assets of the estate." *Collins*, 210 B.R. at 540 (cleaned up).

### III. Conclusion

For these reasons, I will enter a separate order granting the Motion, converting this case to Chapter 13, setting aside the discharge, and permitting the Trustee to file an application for payment of administrative expenses on behalf of himself and his professionals.

Dated: September 4, 2024  
St. Louis, Missouri  
cjs

Brian C. Walsh  
United States Bankruptcy Judge